IMPERIAL ETHIOPIAN
GOVERNMENT,
Plaintiff-Appellee,

v.

BARUCH–FOSTER CORPORATION,
Defendant-Appellant.

No. 75–1127.

United States Court of Appeals,
Fifth Circuit.

July 19, 1976.

Rehearing Denied Sept. 13, 1976.

James L. Truitt, Dallas, Tex., for defendant-appellant.

Robert Layton, Charles J. Lipton, New York City, Michael Lowenberg, Dallas, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Baruch-Foster Corporation (BFC) invoked arbitration to settle a dispute arising under a petroleum development agreement made with the Imperial Ethiopian Government (Ethiopia) in 1966. Ethiopia repudiated its obligations under the agreement in 1970, following BFC's delayed performance of an obligation to drill a test oil well. Pursuant to the agreement each party

named an arbitrator, and the two arbitrators agreed on a third person to serve as the third member and president of the arbitration board. In February 1974 the arbitrators entered their unanimous award, rejecting BFC's defense to its contractual breach and awarding Ethiopia's counterclaim for damages to the extent of $703,188.

BFC was notified of the award in March 1974 but neither made payment nor challenged the award. In June 1974 Ethiopia petitioned in federal district court for confirmation of the arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented by Chapter 2 (§§ 201–208) of Title 9 of the United States Code. Six months later, in December 1974, the court entered an order confirming the award. The dispositive issue on this appeal is whether the District Court erroneously entered judgment without compelling Ethiopia to honor BFC's far-reaching requests for discovery. By written notice pursuant to the Federal Rules, BFC called for Ethiopia to produce documents spanning a period from 1954 to 1974 and relating to an assertion by BFC that Professor Rene David, the president of the arbitration panel, had a material connection with the Ethiopian government which disqualified him from serving as an arbitrator.[1] It is not disputed that beginning in 1954 Professor David served for some period as a draftsman and a member of a code commission drafting a civil code for Ethiopia.

In confirming the award, the District Judge held that BFC had waived any objection to the composition of the board and was estopped from contesting the composition of the board. We affirm the order of the District Court, though our rationale is somewhat different.

"The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). To advance those objectives the implementing legislation prescribed a summary procedure in the nature of federal motion practice to expedite petitions for confirmations of foreign arbitral awards.[2] In addition, 9 U.S.C. § 207 mandates that "the court shall con-

---

1. Also there were discussions between counsel relating to taking depositions in France and elsewhere on the same issue. No written notices were served but the parties and the court treated the availability of discovery as an overall issue, and we do also.

BFC's defense is grounded in Article V of the Convention:

"1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought proof that:

\* \* \* \* \* \*

"(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties."

Section 2 of Article XIX of the Petroleum Development Agreement provided:

"The third arbitrator, who shall serve as President of the Board of Arbitration, shall not be a national of the Empire of Ethiopia or of the United States of America, and shall be chosen from among judges, professors of law, or practicing attorneys, admitted to practice before the highest court of the country of which they are nationals, *who have no connection either directly or indirectly with either Government or BFC or with any association of which either Government or BFC is a member.*" [Emphasis added.]

2. The applicable provision, by operation of 9 U.S.C. § 208, is 9 U.S.C. § 6:

"Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."

Two recent decisions under the Convention have enforced arbitral awards upon motions supported by affidavits: *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA),* 508 F.2d 969 (C.A.2, 1974); *The Island Territory of Curacao v. Solitron Devices, Inc.,* 489 F.2d 1313 (C.A.2, 1973), aff'g 356 F.Supp. 1 (S.D.N.Y.1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974).

firm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." The burden of proof is on the party defending against enforcement. See Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards,* 70 Yale L.J. 1049, 1066 (1961), and *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAK-TA),* 508 F.2d 969, 973 (C.A.2, 1974), where the Second Circuit reviewed the legislative backdrop of the Convention and concluded that it "clearly shifted the burden of proof to the party defending against enforcement."

It is implied in the District Court's decision, though never stated in chapter and verse, that BFC was not entitled to the discovery which it sought and that Ethiopia was entitled to protection against that discovery. The operative facts relating to the issue stated in this form are essentially the same as those which govern the issue characterized by the District Court in terms of waiver and estoppel. The defense alleging disqualification of Professor David was belatedly raised, more than six months after BFC was notified of the award and more than three months after Ethiopia had petitioned for confirmation. Between filing of the petition and the order entered on December 23, BFC had answered on the merits without questioning jurisdiction,[3] had sub-

sequently moved to dismiss on "jurisdictional" grounds,[4] and had demanded a jury trial. The alleged defective composition of the board was not raised until October 15, by an unverified amended answer.[5]

Ethiopia notified the court that it did not oppose judicial determination of the belated issue of Professor David's alleged connection with the Ethiopian government, but, in view of BFC's deteriorating financial condition[6] and its dilatoriness throughout, and the time which would be required for the far-reaching discovery involved,[7] Ethiopia sought the protection of the court. It asked for an attachment of BFC's assets, or in lieu thereof, a surety bond to insure that the judgment obtained, if recognized and enforced by the District Court, would be collectible. Also Ethiopia suggested that unless BFC came forward with some showing of "tangible good faith" supporting the allegation of Professor David's disqualification and the attendant efforts for discovery, the court should strike the request for discovery and confirm the award.

BFC's response was to demand that discovery be ordered, that Ethiopia be required to pay BFC's costs and attorney fees involved in securing discovery, and that if attachment were granted Ethiopia put up a bond in twice the amount of the award.

Ethiopia urges that the discovery procedures of the Federal Rules of Civil Procedure have no application to summary

3. Denying in conclusory language and without statement of reasons that it was obligated to pay the award.

4. Despite the provisions of Fed.R.Civ.P. Rule 12(b). The alleged "jurisdictional" grounds were failure to attach the authenticated original or a certified copy of the award, and changed political conditions in Ethiopia which BFC claimed had dissipated the power of plaintiff counsel to act for the Ethiopian state. We pretermit the validity of these objections since Ethiopia cured both.

5. Although in a memorandum filed with the court in September, BFC had said it might raise the issue if the case reached the "merits." The request for production appears to have been mailed to counsel for Ethiopia in early October.

6. Which Ethiopia documented.

7. For example, the request included any 1954–1974 documents which "embody, refer, or relate to . . . meetings, correspondence, discussions, or other forms of communication among members of Ethiopia, or between any such member or members and any other person, (1) which relate in any way to the consideration and selection of an expert, or redactor, in or about October 1954 for the commencement of study leading to the preparation of the Ethiopian Civil Code . . . (2) relating to the consideration of or selection of a Commission for the preparation of the Ethiopian Civil Code."

---

enforcement of arbitral awards under the statutes involved. This is an issue it is not necessary for us to decide. Assuming that the rules do apply, BFC's right to pursue discovery was not an unqualified one, and Ethiopia was entitled to the protection of the court. BFC misconceives both its entitlement to discovery and the power of the court to protect Ethiopia.[8] Despite having been given time to do so, BFC had brought forward nothing to show that its claim of a disqualifying connection between Professor David and the Ethiopian government had any semblance of substance or that it was even asserted in good faith. The claim never achieved any more dignity than that of a conclusory statement in an unverified answer. While at times BFC gives lukewarm lip service to the power of a district court to enter protective orders, its contention basically was that it had an unqualified right to any discovery it requested, limited only by relevancy.[9] That position would be too broad in an ordinary civil action. It is even more clearly wrong in the summary proceeding here involved. The loser in arbitration cannot freeze the confirmation proceedings in their tracks and indefinitely postpone judgment by merely requesting discovery. In addition to BFC's failure to come forward with anything tending to show that the claim was asserted in good faith and for any reason other than delay, the District Judge had relevant matter before him tending to affirmatively establish that the claim of disqualification was groundless. Affidavits and pleadings set out that Professor David, a Frenchman, was a renowned expert on international law. The District Judge knew that David had been suggested as third arbitrator and president by the arbitrator (an Englishman) selected by BFC. In an affidavit filed with the court this arbitrator described Professor David as one of th most respected comparative lawyers in Europe and throughout the world. While the affiant had no personal knowledge of David's involvement, if any, with Ethiopia between his completing work on the civil code and his appointment to the arbitral board, the affiant described David as a most respected man and a man of honor and of absolute integrity. Also the court had before it Professor David's own affidavit stating that he drafted the Ethiopian code from 1954 to 1958, was paid for his services in 1958, the code was published in 1960, and since that date he had acted in no capacity for the Ethiopian government.[10]

The District Court was empowered to act with respect to discovery. Though its opinion is cast in waiver and estoppel terms the court impliedly denied discovery. Once the discovery issue was out of the way, the matter of confirming the arbitral award was ripe for decision, and the court properly proceeded to enter the confirmation that already was too long delayed.

AFFIRMED.

8. The district court's broad discretion on discovery motions to compel production of documents should not be lightly disturbed. Wright & Miller, Federal Practice and Procedure: Civil § 2215 at 653. See *Brown v. Thompson*, 430 F.2d 1214 (C.A.5, 1970), and *Swanner v. U. S.*, 406 F.2d 716 (C.A.5, 1969).

9. BFC's motion of December 9, 1974, said: ". . . It is respectfully submitted that defendant should be permitted to obtain discovery as authorized by the Federal Rules of Civil Procedure before being required to produce, in the words of the petitioner, 'tangible evidence of its good faith' in asserting a defense which it is entitled to assert . . ." App. at 150.

10. The court did not err in considering these affidavits. The matter before it was not the ultimate issue of Professor David's disqualification nor was it a matter of summary judgment under Rule 56. Rather, in the absence of any affirmative showing of good faith by BFC, the problem was what to do with respect to the question of permitting or limiting discovery on the disqualification issue. The court was free to use reasonable tools to reach a decision, and was not required to resort to the formal taking of testimony or deposition procedures in order to determine whether to permit discovery. Nor was the court required to delay ruling until BFC, theretofore having presented nothing affirmative, got around to crossing the affidavits Ethiopia had filed. Ultimately, after the court had announced its decision, BFC filed an affidavit which did not go to the question of whether David was disqualified but to whether the arbitrator selected by BFC had told BFC's president that Professor David had drafted the Ethiopian civil code.