**INDOCOMEX FIBRES PTE., LTD., Plaintiff,**

v.

**COTTON COMPANY INTERNATIONAL, INC., Defendant.**

**No. 95–2464–M1/V.**

United States District Court, W.D. Tennessee, Western Division.

Feb. 14, 1996.

722

John McQuiston, II, Evans & Petree, Memphis, TN, for plaintiff.

William C. Bateman, Jr., David W. Hawkins, Bateman & Childers, Memphis, TN, for defendant.

## ORDER ENFORCING FOREIGN ARBITRATION AWARD AND DENYING DEFENDANT'S MOTIONS TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE

McCALLA, District Judge.

Before the Court are the following motions: (1) defendant Cotton Company International, Inc.'s Motion To Vacate, Or In The Alternative To Prevent Enforcement Of Foreign Arbitration Award, filed July 7, 1995, (2) defendant Cotton Company International, Inc.'s Motion To Dismiss For Lack Of Jurisdiction, filed July 7, 1995, (3) plaintiff's Motion For Order Confirming And Enforcing Foreign Arbitration Award, filed July 13, 1995, and (4) Plaintiff's Motion To Strike "Defendant's Reply To Plaintiff's Response In Opposition To Defendant's Motion To Dismiss For Lack Of Jurisdiction" Or, Alternatively, Requesting The Court To Consider Plaintiff's Rebuttal, filed July 20, 1995. On

September 22, 1995, the Court held a status conference, at which both parties presented their arguments on the jurisdictional matter in this case. For the reasons stated below, the Court GRANTS plaintiff's Motion For Order Confirming And Enforcing Foreign Arbitration Award, and DENIES defendant's motions to dismiss, thereby rendering MOOT plaintiff's motion to strike.

Plaintiff firm engages in the purchase and milling of raw cotton, and defendant firm merchandises raw cotton. The parties entered into a total of six contracts, two on October 24, 1994, one on November 17, 1994, and three on November 18, 1994. All six contracts covered the purchase of cotton by plaintiff from defendant, for a total of approximately 20,320 bales of cotton. The contracts specifically subject the parties to the By–Laws and Rules of the Liverpool Cotton Association Limited, United Kingdom (Association), and provide that should amicable settlement prove impossible, the matter would be referred to arbitration by the Association.[1]

On December 1, 1994, Charles Parker, President of defendant, and Andrew Wakefield, representative of plaintiff, discussed fulfillment of obligations under the above contracts, in light of existing supply shortages in the domestic cotton market. The parties agreed that defendant would ship 3,000 bales of cotton to plaintiff upon defendant's receipt from plaintiff of a confirmed irrevocable letter of credit at buyer's expense as required by contract terms. The parties further agreed that delivery of the remaining 17,230 bales would be delayed until April/June 1995.[2] Defendant contends that it never shipped the arranged 3,000 bales of cotton to plaintiff because plaintiff's letters of credit contained deficiencies, including the omission of delivery destinations and inadequate repayment guarantees. In December 1994, and January and February 1995, the parties discussed the deficiencies. According to defendant, the deficiencies remained uncorrected and, to avoid further losses, defendant sold 2,600 bales to another purchaser on February 2, 1995.

On February 22, 1995, plaintiff submitted the matter to arbitration, pursuant to the rules of the Association.[3] On May 15, 1995, the arbitrators rendered a decision in favor of plaintiff Indocomex Fibres. On June 13, 1995, plaintiff brought suit in this Court for enforcement of the Association's arbitration award, pursuant to 9 U.S.C. §§ 201 *et seq.*, 9 U.S.C. §§ 1 *et seq.*, T.C.A. §§ 29–5–201, *et seq.*, and T.C.A. §§ 29–5–301, *et seq.* Defendant argues that the Court should not enforce the agreement on two alternative grounds: first, this Court has no jurisdiction over enforcement in this matter, and second, the arbitration award should be set aside as a result of fraudulent acts committed by the plaintiff.

1. Each contract contained the following "Rules" and "Payment" terms.

 Rules: If amicable settlement not possible, then arbitration to be governed by Liverpool Cotton Association, Ltd., Liverpool, U.K.
 Payment: At sight in U.S. Dollars by confirmed irrevocable letter of credit to be opened at buyer's expense on prime U.S.A. bank.

2. The agreement to postpone delivery on contract Nos. 8400361 and 8400362 was reduced to writing, while the postponement of delivery on the remaining contracts remained as an oral agreement.

3. On March 30, 1995, the President of the Association informed defendant that, in accordance with Association Rule 340(4)(b), he appointed R.A. Brown as arbitrator because defendant had failed, after being given notice two weeks earlier, to nominate their own arbitrator. Also on March 30, the Association notified defendant that it would proceed to settle the dispute in arbitration *ex parte* if the Association had not received defendant's written submissions regarding the dispute by May 4, 1995. The Association did not receive such submissions from defendant, and proceeded *ex parte*. Defendant raises no allegations of insufficient notice in this case. The arbitrator found that defendant's omission or inability to satisfy its contractual responsibility entitled plaintiff to have the contract closed out by being invoiced back in accordance with the Association's By–Laws and Rules. The arbitrator awarded plaintiff money, basing the amounts on the difference between the contract value and the market value on the date of breach, which was determined at arbitration to be February 22, 1995. Defendant was ordered to pay to plaintiff a total of $2,937,950.00 and $52,802.60 in interest, with the award continuing to accrue interest at a rate of two percent per annum until the date of payment. The award notified defendant that available time for notice of appeal expired June 12, 1995.

■ Parties to a contract may agree to subject any contract disputes to binding arbitration and may also agree upon a particular tribunal for reviewing the arbitration award. *Monte v. Southern Delaware County*, 321 F.2d 870, 874 (3d Cir.1963); *Monte v. Southern Delaware County Authority*, 335 F.2d 855, 857 (3d Cir.1964); 9 U.S.C. § 9. Further, a mandatory forum selection clause will operate to bar the jurisdiction of all forums not designated in the clause. *International Association Bridge, Structural and Ornamental Iron Workers, Local Union 348, AFL–CIO v. Koski Construction Company*, 474 F.Supp. 370 (W.D.Penn.1979). However, in the absence of any such mandatory language imposing exclusive jurisdiction, federal court jurisdiction is not so limited. *International Association Bridge*, 474 F.Supp. at 372.

### The United States District Court's Jurisdiction

In the present matter, the parties agreed to and submitted to arbitration by the Association, and agreed that the laws of England shall apply in interpreting the contracts and the By–Laws and Rules of the Association. The disputed jurisdictional issue is whether the parties, in so agreeing, also agreed that only the High Court of England has jurisdiction over *enforcement* of the arbitration agreement.

Defendant Cotton Company argues that Liverpool Cotton Association Rules and By–Laws prohibit enforcement of the Association's arbitration award by courts of the United States. Plaintiff counters that the Rules and By–Laws do not limit enforcement of arbitration agreements to the High Court of Justice in England, but rather, simply allow that forum as an option, to be weighed by the parties, against other potential forums, such as the courts of the United States. The specific rules in dispute are Bylaw 200, Rule 300, Rule 305 and Rule 342(2).

■ Association By–Law 200 provides,

Every contract made subject to the By–Laws and/or Rules of the Association, or subject to Liverpool Arbitration, or containing words to a similar effect, is to be construed and take effect as a contract made in England and in accordance with the laws of England and is to be deemed in all respects save as provided by By–Law 202, to be subject to these By–Laws and Rules, and parties to the contract shall be considered to have submitted to the jurisdiction of the High Court of Justice in England, for the purpose of giving effect to the provisions of the By–Laws and Rules.

Association By–Law 200.[4] Defendant argues that By–Law 200 establishes the jurisdictional issue in this case. By submitting to the Association for arbitration and agreeing to the Association's Rules, the contract was essentially converted into an English contract, and the High Court thereby obtained jurisdiction over the arbitration decision. Defendant argues that By–Law 200 settles the jurisdictional issue in this case, barring any enforcement proceeding in any court other than the High Court. However, By–Law 200 extends only to the arbitration proceeding and to the terms of the decision, which are to be interpreted by the High Court in accordance with the Association's Rules and By–Laws. By–Law 200 does not extend to the subsequent enforcement of the arbitration award.

Rule 300 explains how contract disputes, submitted to arbitration, obtain access to the High Court. Rule 300 provides in pertinent part,

(1) Whenever any difference touches or arises out of any transaction or contract which is subject to the By–Laws and Rules of the Association or subject to Liverpool Arbitration, or contains words to a similar effect, such differences shall be referred to arbitration in accordance with the By–Laws and Rules.

(2) It is hereby expressly declared that, in all cases provided for by paragraph (1) hereof the holding of such an arbitration as

---

**4.** Association By–Law 202, referred to in By–Law 200, states that the By–Laws and Rules apply in cotton sales unless the terms of the contract, expressly or impliedly, are inconsistent with the Rules and By–Laws. Neither party has alleged any such conflict in this matter, and thus, By–Law 202 has no impact on the Court's decision.

aforesaid in the obtaining of an Award thereunder shall be a condition precedent to the right of any party to a contract to commence legal proceedings against the other party in respect of any such differences as aforesaid and neither party shall have any right of action against the other touching or arising out of any such matter or contract except to enforce the award in any such arbitration.

Association Rule 300. In submitting to English law, and specifically, to the Association Rules and By–Laws, the parties obtained access to the High Court only post-arbitration award, the first such opportunity being an appeal of the arbitration decision. It does not follow, however, as defendant argues, that simply because the parties only have access to the High Court after the arbitration award has been rendered, that the High Court is the mandated forum for enforcement of the award.

Defendant contends that mandatory jurisdictional authority for the enforcement of arbitration decisions is most clearly set forth in Rule 342, which provides in pertinent part:

(2) Every arbitration conducted in accordance with the By–Laws and Rules of the Association shall have its seat in Liverpool, be governed by English law, shall be conducted in accordance with English law and procedure and shall be subject to the supervisory and appeal jurisdiction (so far as appropriate) of the English Courts and no other courts.

Association Rule 342(2). However, Rule 342 addresses the supervisory and appeal jurisdiction of the award, it does not address the enforcement of awards. In this case, defendants were notified by the arbitrator that they had to submit a notice of appeal by June 12, 1995. There is no evidence that defendant filed an appeal within the relevant time

period. Had it appealed the decision in the requisite time, exclusive jurisdiction over the appeal would have belonged to the High Court, as authorized by Rule 342. However, an appeal is distinct from an enforcement of an award, and as Rule 342 does not address enforcement of arbitration awards, it does not apply to the issue presently before the Court.

Rule 305 directly addresses the enforcement of arbitration awards. The language of Rule 305 is permissive rather than mandatory. Rule 305 states,

Any award made under the By-laws and Rules may (without prejudice to the other rights and remedies of the parties under the Rules) be enforced in the manner in the Arbitration Act of 1950 or any statutory modification thereof for the time being enforced.

Association Rule 305. The Arbitration Act states,

An award of an arbitration agreement may, by leave of the High Court or a judge thereof, be enforced in the same manner as a judgment or order to the same effect, and where leave is so given, judgment may be entered in terms of the award.

Arbitration Act 1950, § 26(1). In combination, the Arbitration Act and Rule 305 authorize the enforcement of arbitration awards in the High Court. However, they do not limit such enforcement to the High Court. In the absence of mandatory forum selection language in the contracts between plaintiff and defendant, Rule 305 does nothing more than confirm that a range of forums, including the High Court, are available to plaintiff for the enforcement of the Association's arbitration award.[5]

---

5. In support of its position, plaintiff submitted to the Court a statement from Honorable Ian Evans, from a firm of solicitors, Weightman Rutherfords of Liverpool, England. Evans has been involved in Liverpool arbitrations and in the application of the By–Laws and Rules for almost twenty (20) years. The Court agrees with Evans' statement,

I agree with [Indocomex's] interpretation of Rule 305. The word "may" is entirely permissive. It is a basic rule of interpretation of

English law that language ought to be given its plain meaning. The English Courts have considered the meaning of the word "may" on many occasions in cases involving the interpretation of its own rules of Court procedure. It has been held that the use of the word "may" is entirely permissive. *See Nagy v. Cooperative Press Limited*, (1949) 2 KB 188, 193.

Notice of Foreign Law Pursuant to F.R.C.P. 44.1 In Connection With Defendant's Motion to Dismiss For Lack Of Jurisdiction, attachment p. 2.

*Enforcement Of The Arbitration Award*

■ The United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (Convention), implemented by federal law, 9 U.S.C. §§ 201 *et seq.*, supports not only the United States District Court's jurisdiction over the enforcement of the Association's arbitration awards, but also supports this Court's enforcement of the arbitration award presently before the Court.[6] "The goal of the Convention, and the principal‐ purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate awards are enforced." *Imperial Ethiopian Government v. Baruch–Foster Corp.*, 535 F.2d 334, 335 (5th Cir.1976); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). In its memorandum, defendant concedes that "9 U.S.C. § 207 allows parties to enforce foreign arbitration awards in federal district court." [7] Memorandum In Support Of Cotton Company International's Motion To Vacate Or In The Alternative To Prevent Enforcement Of Foreign Arbitration Award, p. 5.

■ Under 9 U.S.C. § 207, the burden of proof of every element of a defense is on the party defending against enforcement. *Imperial*, 535 F.2d at 336. Public policy favors recognizing and enforcing international arbitration agreements because the consequent reliability of the contracts promotes export by United States merchants of United States goods. *Scherk*, 417 U.S. 506, 94 S.Ct. 2449; *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973), *cert. denied* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974); *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir.1975).

■ 9 U.S.C. § 203 grants the United States district courts jurisdiction over arbitration award proceedings. It provides,

> An action or proceeding following under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 207 requires the United States district courts to enforce arbitration awards. Section 207 states,

> Within 3 years after an arbitral award following under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.

Article V of the Convention, 9 U.S.C. § 207 mandates that "the court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Because the public policy favoring international arbitration is strong, it has been held that the terms of the Convention are to be construed broadly, and circumstances warranting a denial of enforcement are narrowly drawn. *Geotech Lizenz AG v. Evergreen Systems*, 697 F.Supp. 1248, 1252 (E.D.N.Y.1988), citing *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983). 9 U.S.C. § 207 sets forth seven exceptions to the general mandate to district courts to enforce arbitration awards. Only when one or more of these is met can a district court refuse or defer enforcement; otherwise the Court must confirm the award.[8] *Fertilizer Corp. of India v. IDI*

---

**6.** The Convention is a United Nations treaty to which the United States became a party in December 1970. Legislation implementing the Convention is codified in Chapter 2 of Title 9 of the United States Code.

**7.** A party seeking recognition and enforcement of an award must supply with its application the original award and original agreement between the parties, or certified copies of those documents. Convention, Art. IV. Defendant makes

no allegation that plaintiff has failed to supply the above documents to the Court.

**8.** In support of its position, plaintiff cites 3 Fed. Proc., L.Ed. Arbitration, Section 4: 175, which states,

> Section 207 of the implementing legislation requires a District Court to confirm foreign arbitral awards under the Convention unless it finds one of the grounds for refusal or deferral thereon specified in the Convention. This is a

*Management Inc.*, 517 F.Supp. 948, 951 (S.D.Ohio 1981). Defendant alleges only the following ground under 9 U.S.C. § 207 as cause for this Court to vacate the Association's arbitration award:[9]

> Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that
>
> . . .
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

9 U.S.C. § 207, Part 2(b) of Article V. The public policy limitation on the Convention is to be construed narrowly, and should be applied only where enforcement would violate the forum state's most basic notions of morality and justice. *Fotochrome*, 517 F.2d at 516.

■ Defendant contends that plaintiff committed fraud by failing to provide a letter of credit in a timely manner.[10] It argues that such fraud offends the public policy of the United States, and thus, Part 2(b) of Article V applies to the present matter.

Similarly, defendant argues that the presence of fraud operates to authorize a court to vacate the arbitration award, pursuant to 9 U.S.C. § 10(a). Section 10(a) applies to enforcement actions brought under the Convention, 9 U.S.C. § 207. 9 U.S.C. § 208 states in pertinent part,

> Chapter 1 [9 U.S.C. §§ 1 *et seq.*] applies to actions and proceeding brought under this chapter [9 U.S.C. §§ 201 *et seq.*] to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

Thus, 9 U.S.C. § 10(a), which falls in Chapter 1, applies to enforcement actions brought pursuant to the Convention. That section provides that a district court "may make an order vacating the award upon the application of any party to the arbitration . . . where the award was procured by corruption, fraud, or undue means . . ." 9 U.S.C. § 10(a).

The Tennessee Cotton Arbitration Act, T.C.A. § 29–5–201 *et seq.*[11] authorizes a district court's enforcement of a foreign arbitration award. However, defendant argues that fraud is also a basis under state law for vacating the arbitration award,[12] and thus,

---

reference primarily to Article V of the Convention, which sets forth a total of seven grounds for refusing to recognize and enforce an award, five of which can be raised only by the parties against whom the award is being invoked . . .

9. The grounds stated in Article V of the Convention are: (1) the parties were incapacitated, or the agreement is not valid under the law; (2) lack of proper notice; (3) the award is beyond the scope of the matter submitted to arbitration; (4) the arbitral procedure or authority was not in accordance with the agreement of the parties; (5) the parties are not yet bound by the award or the award has been set aside by a competent authority under the law of which the award was made; (6) the subject matter of the proceeding is not a proper matter for arbitration; and (7) the recognition or enforcement of the award would be contrary to public policy. 9 U.S.C. § 207.

10. Defendant argues that plaintiff's failure to provide a timely irrevocable letter of credit as mandated by its contract with defendant meets the four elements of fraud as defined by Tennessee jurisprudence. The elements of fraud are: (1) intentional misrepresentation of material fact, (2) knowledge of the falsity of that representation, (3) injury caused by reasonable reliance on the representation, and (4) a promise of future action with no intent to perform. *Axline v. Kut-*

*ner*, 863 S.W.2d 421 (Tenn.App.1993). Defendant argues that all criteria are met in this case, emphasizing, "Plaintiff's systematic acknowledgement of deficiencies along with its failure to correct same forced the action by Defendant which gave rise to the potentially injurious arbitration award." Memorandum In Support Of Cotton Company International's Motion To Vacate Or In The Alternative To Prevent Enforcement Of Foreign Arbitration Award, p. 4.

11. The Tennessee Cotton Arbitration Act provides,

> Notwithstanding any other provision of law to the contrary, the Court shall not confirm an award under Section 29–5–212 or enter judgment or decree in conformity therewith under Section 29–5–215 where the arbitration hearing or award was made outside of the United States and its territories and the foreign state wherein the award was made does not grant reciprocity in recognition and enforcement of arbitration awards made in the United States or its territories.

T.C.A. § 29–5–220(a).

12. Before applying Tennessee law, the Court must determine that it has subject matter jurisdiction. Subject matter jurisdiction exists pursuant to 9 U.S.C. § 203 and pursuant to 28 U.S.C.

state law cannot support this Court's enforcement of plaintiff's award. Tennessee law provides that arbitration awards may be vacated where the award was "procured by corruption, fraud or other undue means." T.C.A. §§ 29–5–213(a)(1) and T.C.A. §§ 29–5–313(a)(1).

■ It is unnecessary for the Court to detail defendant's specific allegations of fraud committed by plaintiff because defendant's allegations involve the merits of the contractual dispute and as such are issues not properly before this Court. A Court will not reconsider the merits of the breach of contract dispute which is subject to arbitration. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299, *cert. denied* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (2d Cir.1963). *See Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104 (N.D.Ill.1980) (holding that an arbitration award may not be vacated for manifest disregard of the law or as fundamentally irrational unless there was failure to decide in accordance with relevant provisions of law and not mere error in interpretations of law). Furthermore, the arbitrator is not required to explain or give a reason for an award. *Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312 (7th Cir.1981).

Defendant essentially argues that the arbitration award should never have been rendered because plaintiff failed to provide irrevocable letters of credit in the time required under the contract between the parties. Defendant further contends that delivery of the remainder of shipments due to plaintiff by defendant was not required under the contracts until April–June 1995, and therefore, no breach could have taken place until these dates had passed. As these are issues concerning the merits of the dispute, they are not proper considerations for this Court.

Fraud, as covered by 9 U.S.C. § 10(a), requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of the arbitrator, or willfully destroying evidence, and further requires that such evidence of fraud was unavailable to the arbitrator during the course of the proceeding. *See Steelworkers,* 363 U.S. at 597, 80 S.Ct. at 1361 (stating that if an arbitrator were bribed the result would be equivalent to an arbitrator dispensing his own brand of individual justice); *Shearson,* 493 F.Supp. at 108–109 (stating that the arbitrator's finding that the brokerage firm has unlawfully terminated employee could not be vacated on ground that it was procured by undue means, absent a finding of bad faith or corruption; and in order to obtain vacation of arbitration award on ground of newly discovered evidence, party was required to show that it could not have discovered evidence prior to arbitration proceeding); *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (in dispute between subcontractor and prime contractor, where neither the prime contractor nor arbitrator disclosed the close financial relations that existed between them for a number of years, the subcontractor was entitled to have the award set aside); *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement and Gypsum Corp.,* 791 F.2d 1334 (9th Cir.1986) (only extraordinary circumstances warrant setting aside an arbitration award).

■ In the present matter, defendant does not allege that plaintiff concealed information from the arbitrator, or that the arbitrator was not privy to relevant information. Nor does defendant allege that the proceedings were suspect in any manner, or that evidence of fraud was only discovered after the arbitration proceedings. Defendant simply contends that the arbitrator's decision was faulty. Such an objection cannot constitute fraud under 9 U.S.C. § 10(a), 9 U.S.C. § 207, T.C.A. § 29–5–213(a)(1), or T.C.A. § 29–5–313(a)(1); if it did so constitute, any unsuccessful party would have recourse to

§ 1332, which covers cases where the matter in controversy exceeds $50,000 exclusive of interests and costs, and is between a citizen of the State of Tennessee and the subject of a foreign state. T.C.A. § 29–5–212, –215, –312, and –315 provide for the entry of a judgment based upon the arbitration award.

contest arbitration claims under those sections.

For the above reasons, the Court hereby enforces plaintiff's arbitration award. The arbitration award provides that plaintiff will receive interest in the amount of two percent per annum over the New York prime rate, from June 5, 1995 to the date of payment. Plaintiff has agreed to waive interest between June 5, 1995 and the date of entry of this Court's judgment.[13] From the date of this judgment until payment, interest will accrue as provided in 28 U.S.C. § 1961. All other terms of the arbitration award are enforced by this Court, and defendant is bound to pay plaintiff in accordance with those terms.

This motion DENIES defendant's motions to dismiss, and renders MOOT plaintiff's motion to strike. The clerk is directed to enter a judgment for the plaintiff in the amount of $2,937,950.00 plus $52,802.00 interest in accordance with the arbitration award, and interest will accrue as provided in 28 U.S.C. § 1961 from the date of this judgment.

SO ORDERED.

---

13. Plaintiff drafted and submitted to the Court an order confirming and enforcing foreign arbitration award, in which it waives interest pending the Court's ruling in this matter.