[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON REQUEST BY THE HARTFORD STEAM BOILER INSPECTIONAND INSURANCE COMPANY FOR EVIDENTIARY HEARING
The Hartford Steam Boiler Inspection and Insurance Company ("HSB") has filed an Amended Application to Vacate Arbitration Award dated May 30, 1996. The arbitration award pertains to a dispute between HSB and the defendant, Industrial Risk Insurers ("IRI"). HSB has stated the following as grounds on which the arbitration award should be vacated:
a. the arbitrators demonstrated evident partiality;
b. the arbitrators' qualifications failed to conform to the agreement to arbitrate;
c. the arbitrator selection process operated to ensure an arbitration panel that was biased or prejudiced against the plaintiff and in favor of the defendant;
d. the arbitrators were improperly selected in violation of the agreement to arbitrate;
e. the arbitration selection process violated public policy; and
f. the arbitrators were guilty of misconduct by which the plaintiff's rights have been prejudiced.
BACKGROUND
HSB is an insurance company with its principal place of business in Hartford, Connecticut. It insures what are commonly referred to in the industry as boiler and machinery risks. IRI, formerly known as Factory Insurance Association, is an unincorporated association of insurance companies which acts as a direct writer of insurance for large commercial risks on behalf CT Page 10126 of its member companies and as a cedent of boiler and machinery reinsurance to member companies. On April 8, 1975 IRI, then known as Factory Insurance Association, entered into a Reinsurance Treaty with HSB under the terms of which HSB agreed that it would accept coverage classified as boiler and machinery coverage ceded to it by IRI.
On January 13, 1992 Monsanto Corporation, an insured of IRI, sustained a loss in excess of $150 million at its Chocolate Bayou plant in Alvin, Texas. A dispute arose between IRI and HSB regarding whether the reinsurance contract between them covered the Monsanto loss. As a result of the dispute HSB commenced two civil actions against IRI in the Hartford Superior Court in November, 1992, Docket Nos., 703764 and 703765 (the Phase I lawsuits). In those actions HSB sought to enjoin an arbitration between IRI and Monsanto's All Risk property insurers. The purpose of that arbitration was to determine whether the boiler and machinery insurer (IRI, reinsured by HSB) or the All Risk insurers should cover the Monsanto Chocolate Bayou factory loss.
After the Phase I lawsuits were filed, IRI and HSB entered into a Settlement Agreement dated February 22, 1993. That Settlement Agreement provided for a three-phased arbitration process. The Phase I arbitration was to determine whether the loss was a boiler and machinery loss or an All Risk loss. The Phase II arbitration was to determine the terms and conditions of HSB's reinsurance contract with IRI, and the Phase III arbitration was to determine whether the loss which IRI is required to pay as a result of the Phase I arbitration is reinsured under the contract of reinsurance as identified in the Phase II arbitration award.
As a result of the aforementioned Settlement Agreement, the Phase I lawsuits were dismissed with prejudice by Judge Wagner. Under the Settlement Agreement HSB agreed that the Phase II arbitration panel would be appointed and have its initial meeting within 45 days after a final decision in the Phase I arbitration and that the Phase III arbitration panel would be appointed and have its initial meeting within 45 days after a final decision in the Phase II arbitration.
On December 27, 1993 the Phase I panel determined that the Monsanto loss was within the terms of IRI's boiler and machinery coverage. On May 5, 1994 HSB filed another lawsuit in this court in which it claimed that the process by which the Phase II CT Page 10127 arbitration panel was selected violated the Settlement Agreement and that some of the panel members were not qualified. In that lawsuit HSB sought to enjoin the Phase II arbitration.
Shortly after the action of May 5, 1994 was filed IRI moved to compel the Phase II arbitration and to stay litigation. On September 20, 1994, the court, Corradino, J., denied IRI's motions, without prejudice, and held that the arbitration provisions between HSB and IRI are governed by the Federal Arbitration Act, and that HSB's claim that the arbitrators were not chosen in accordance with the manner agreed to by the parties should be decided before the arbitrators commenced the Phase II arbitration. Between October and December, 1994 HSB conducted discovery related to its attempt to enjoin the Phase II arbitration. On December 12, 1994 a hearing on the injunction commenced before Judge Corradino and after thirteen days of evidence, concluded on February 23, 1995.
On October 26, 1995 Judge Corradino issued a fifty eight page memorandum of decision. In that memorandum the court pointed out that Article 9 of the Reinsurance Agreement between IRI and HSB set out the agreement on arbitration. That Article provided for a five member loss arbitration panel of which four members were to be representatives of IRI members and one member was to be a representative of the Reinsurer involved in the loss in question. Article 9 specifically provided that the arbitrators were to be appointed by the IRI Standing Loss Committee. A large part of HSB's argument in the injunction action heard by Judge Corradino centered around the fact that counsel for IRI and/or IRI staff had communicated with arbitrators prior to their being chosen. HSB also argued that the appointment of retirees to serve on the arbitration panel violated the terms of the arbitration agreement.
Judge Corradino found that one of IRI's attorneys, Richard Voelbel, collected names of potential panelists and then Voelbel and Seale Tuttle, general counsel for IRI, interviewed the candidates and prepared a "short list" of seven names for the Los Committee. He found that "there was no evidence presented to counter Mr. Voelbel' assertion that the original pool of people he listed was prepared for any other reason in mind than to select qualified people." Judge Corradino also found: "there was no evidence presented that contradicted Mr. Voelbel's testimony that the interviews of the prospective candidates covered anything more than their willingness and availability to serve or CT Page 10128 even that based on these interviews Voelbel and Tuttle decided to put people on the short list because the interviews indicated they would be favorable to IRI's position or exclude anyone that was unfavorable."
Judge Corradino further found as follows. HSB failed to establish that the IRI Loss Committee merely rubber-stamped arbitration selections of IRI staff and counsel or that the Loss Committee intentionally selected panelists whom HSB's adversaries wanted on the panel. The selection process was proper and consistent with the agreement to arbitrate. The appointment of retired persons as arbitrators was fully consistent with Article 9 of the Reinsurance Agreement. There was no evidence of bias or partiality on the part of any of the four panelists HSB complained about, even though HSB had the opportunity to develop this evidence.
On December 28, 1995 Judge Corradino issued an order staying all remaining issues in the Phase II lawsuit and directing the parties to proceed with arbitration. HSB appealed the court's decision, but the Appellate Court granted IRI's motion to dismiss the appeal on the grounds that the order staying the lawsuit was interlocutory.
On May 17, 1996 the Phase II panel rendered a Final Decision identifying the terms and conditions of the reinsurance agreement between HSB and IRI. On that same day HSB began the present proceeding in this court by filing an application to vacate the decision of the Phase II panel, which application was subsequently amended.
On June 4, 1996 the parties appeared in this court on the Amended Application to Vacate. At that time a dispute arose regarding whether HSB would be entitled to engage in further discovery and whether it would be entitled to an evidentiary hearing on the Application to Vacate. Thereafter this court, Berger, J., ruled that the scope and extent of any further evidentiary hearing would depend on whether HSB could make a preliminary showing that the arbitrators were guilty of evident partiality. Judge Berger ordered "that a hearing shall be held . . . for the purpose of allowing HSB to present whatever evidence it may have of impropriety on the part of the arbitrators."
On June 11, 1996 the court, Wagner, J., held a full-day CT Page 10129 hearing pursuant to Judge Berger's Order. At that hearing HSB again advanced the claims which had been litigated at some extraordinary length before Judge Corradino: that the arbitrators on the Phase II panel had been improperly selected and were not properly qualified. The only other evidence of arbitrator misconduct advanced by HSB before Judge Wagner was: 1) the refusal of the Phase II panel to grant HSB's request for a continuance prior to the September 27, 1994 meeting of the panel; 2) a request by the Chairman of the Phase II panel to a witness to refrain from continuing to repeat a phrase in answering questions; and
3) the Phase II arbitrators should have disclosed pre-appointment interviews with IRI counsel or staff.
Judge Wagner did not reconsider the claims which had already been decided by Judge Corradino. He did find as follows:
 1. The Phase II panel's refusal to postpone a business meeting at HSB's request did not evidence partiality or misconduct;
 2. The actions of the panel Chairman in directing a witness to stop repeating a particular qualifying phrase was "an insufficient basis on which to predicate a claim of partiality and misconduct."
 3. HSB's claim that the arbitrators were guilty of misconduct because they should have disclosed pre-appointment interviews "is too speculative and devoid of any supportive authority to warrant serious consideration."
RIGHT TO EVIDENTIARY HEARING
While parties are sometimes afforded an evidentiary hearing in connection with an application to vacate an arbitration award, such a hearing is not required under any state or federal statute, or under the case law. Connecticut General Statutes § 52-420 does not contemplate an evidentiary hearing. It provides:
 Any application under section 52-417 [Application for order confirming award], 52-418 [Vacating award], or 52-419
[Modification or correction of award] shall be heard in the manner provided by law for hearing on written motions at a CT Page 10130 short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay.
Under Section 6 of the Federal Arbitration Act, an application to vacate an award "shall be made and heard in the manner provided by law for the making and hearing of motions."9 U.S.C. 7; 6. Summary procedures are sufficient on a motion to vacate, evidentiary hearings are not necessary. O.R. Securitiesv. Professional Planning Associates, Inc., 857 F.2d 742, 745, 746
(11th Cir. 1988); Imperial Ethiopian Government v. Baruch-FosterCorp., 535 F.2d 334, 337 (5th Cir. 1976); Austin South I, Ltd. v.Barton-Malow Co., 79 F. Sup. 1135, 143-44 (M.D. Fla. 1992); Huntv. Mobil Oil Corp., 654 F. Sup. 1487, 1496 (S.D.N.Y. 1987).
In O.R. Securities the Court stated that the policy behind section 6 of the Federal Arbitration Act "is to expedite judicial treatment of matters pertaining to arbitration." It held that the district court did not err in failing to hold an evidentiary hearing on the motion to vacate the arbitration award because the federal rules of procedure did not provide for such a hearing and because the moving party had failed to allege sufficient bases to support its claims for relief 857 F.2d at 746, n. 3. The plaintiff in O.R also argued that the district court should have permitted it to do discovery to determine whether the arbitrators had disregarded the law. The Court rejected that argument and stated:
 We find that the district court did not abuse its discretion in not permitting discovery on this issue. "Arbitration proceedings are summary in nature to effectuate the national policy of favoring arbitration, and they require `expeditious and summary hearing, with only restricted inquiry into factual issues'" Legion Insurance Co. v. Insurance General Agency, Inc., 822 F.2d 541, 543 (5th Cir. 1987) quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983).
857 F.2d at 747-48.
The Court in O.R. Securities as well as other courts have required a preliminary showing as a prerequisite to obtaining discovery or a hearing. See Imperial Ethiopian Government v.Baruch-Foster Corp., 535 F.2d 334, 337 (5th Cir. 1976) (confirming award and denying discovery because losing party "had brought forward nothing to show that its claim of a disqualifying CT Page 10131 connection . . . had any semblance of substance or that it was even asserted in good faith"); Austin South I, Ltd. v.Barton-Malow Co., 79 F. Sup. 1135, 1141, 144 (M.D. Fla. 1992);Matter of Andros Compania Maritima (Marc Rich Co., AG),579 F.2d 691, 695-696, 701 (2nd Cir. 1978); Hunt v. Mobil Oil Corp.,654 F. Sup. 1487, 1494-5 I (S.D.N.Y. 1987).
HSB has cited the cases of White v. Kampner, 229 Conn. 465,641 A.2d 1381 (1994) and Schwarzschild v. Martin, 191 Conn. 316,464 A.2d 774 (1983) in support of its claim of a right to an evidentiary hearing. However, the right to an evidentiary hearing was not an issue in either of those cases. The trial courts inWhite and Schwarzschild did conduct evidentiary hearings in connection with applications to vacate arbitration awards. However, those cases merely demonstrate that courts can and have conducted such hearings. They do not hold or even suggest that the court is required to hold an evidentiary hearing in deciding a motion to vacate an arbitration award.
In this case HSB complained about the selection and qualifications of arbitrators prior to the commencement of the Phase II arbitration. Notwithstanding considerable authority to the effect that the proper time to raise issues of arbitrator bias and misconduct is after the arbitration, HSB sought and received a pre-arbitration hearing before Judge Corradino. In holding the hearing at that time Judge Corradino relied heavily on the cases of Gaer Bros., Inc. v. Mott, 144 Conn. 303,130 A.2d 804 (1957) and Metropolitan Property Casualty Ins. Co. v. J.C.Penney Casualty Ins. Co., 780 F. Sup. 885 (D.Conn. 1991). The basis for the pre-arbitration review in those cases, as noted by Judge Corradino, was the promotion of efficiency — the entire arbitration process would be a futile exercise if the claims of misconduct were later found to be valid.
In addition to the 13 days of evidence and fifty-eight page decision by Judge Corradino in which the court considered and decided four of the claims which HSB has advanced as bases for its Application to Vacate (claims b, c, d, and e set forth on page 2 hereof), HSB has been afforded the opportunity to establish a prima facie showing of the validity of the remaining issues before Judge Wagner.
HSB now wants this court to reconsider the voluminous evidence presented to Judge Corradino, and to allow additional discovery and afford a further evidentiary hearing, CT Page 10132 notwithstanding that Judge Wagner has found that HSB has failed to make a prima facie showing as to the validity of the only issues not considered by Judge Corradino.
Under so-called law of the case doctrine "`Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided . . . .' Breen v. Phelps, 186 Conn. 86, 99,439 A.2d 1066 (1982)." Lewis v. Gaming Policy Board, 224 Conn. 693,697, 620 A.2d 780 (1993). "`Nevertheless, if the case comes before [a subsequent judge] regularly and he becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment.' Id., 100." Id.
Although this case may have a different docket number from the case decided by Judge Corradino, HSB is asking this court to re-determine the exact same issues that Judge Corradino has determined. I have reviewed the decision of Judge Corradino and find that it gave extremely thorough consideration to the same issues now raised by HSB. Reexamining the evidence before Judge Corradino would not only give HSB a "third bite at the apple," it would seriously contravene the goal of expedient judicial treatment of matters pertaining to arbitration
HSB was afforded an opportunity to make a preliminary showing that its claims as to the matters which Judge Corradino had not decided were sufficient to warrant further discovery. Judge Wagner found that HSB was unable to make such a showing. While I am not bound by the decision of Judge Wagner, I have reviewed that decision and find it to be well reasoned and thorough. Judge Wagner's ruling was limited to the determination of whether HSB had established prima facie claims sufficient to permit it to take further discovery. However, if HSB was unable to convince the court that its claims warranted discovery, the policy favoring expedient judicial treatment of arbitration decisions dictates that those claims should not warrant a further evidentiary hearing.
For the foregoing reasons HSB's request for an evidentiary hearing is denied.
By the court, CT Page 10133
Aurigemma, J.