**GEOTECH LIZENZ AG, Plaintiff,**

v.

**EVERGREEN SYSTEMS, INC., Defendant.**

**No. CV 88–1406.**

United States District Court, E.D. New York.

Oct. 27, 1988.

---

Vincent G. Berger, Jr., Babylon, N.Y., for plaintiff.

Cahn, Wishod, Wishod & Lamb by Scott M. Karson, Melville, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Geotech Lizenz AG ("Geotech" or the "Petitioner") commenced this proceeding, pursuant to 9 U.S.C. § 207, to recognize and enforce a foreign arbitral award. Enforcement is resisted by Evergreen Systems, Inc. ("Evergreen" or the "Respondent") on several grounds. Because this Court finds that Evergreen has raised no ground warranting a refusal of recognition, the petition for enforcement is granted.

## I. *Background*

### A. The Parties' Business Relationship

Geotech, a Swiss corporation, is the owner and licensor of a concrete retaining wall and noise abatement system known as the "Evergreen Wall System." In October 1983, Felix Jaecklin, on behalf of Geotech, entered into a partnership agreement with Henry Carlson, the president of Evergreen (the "Partnership Agreement"). That agreement, entitled the "Founding Partner Cooperation Agreement for Evergreen System Corp. Ltd.," sets forth the partners' respective shares in future profits and envisions the development of a network of local licensee-manufacturers of Evergreen Wall Systems. The Partnership Agreement refers specifically to a licensing agreement known as the "License Management Agreement" ("LMA") and states that the LMA forms the working base for the licensees and that the Partnership Agreement is intended to "complement and work within [the] framework" of the LMA. Partnership Agreement ¶¶ B(2)–B(3). The Partnership Agreement further states that the partners have agreed upon all aspects of the LMA and intend to follow it "meaningfully." Partnership Agreement ¶ B(1).

The LMA sets forth, in greater detail than the Partnership Agreement, the parameters of the parties' business agreement. It refers to Geotech as the licensor and to Evergreen as the "License Manager." The LMA sets forth Evergreen's responsibilities with respect to the building up of a network of local licensees and the coordination and support of the activities of these licensees. With the exception of issues involving patents or trademarks, the LMA provides that the agreement is to be

governed by the laws of Switzerland. LMA ¶ 9.

Paragraph 10 of the LMA is entitled "Arbitration" and sets forth the dispute resolution mechanism envisioned by the parties. The arbitration clause is broad, stating that "[a]ny dispute arising hereunder which cannot be resolved by the parties shall be referred to an arbitrator." LMA ¶ 10(a). The arbitration clause further provides that the arbitration will be governed by the rules of arbitration of the Chamber of Commerce in Zurich. If the parties cannot agree upon an arbitrator, the LMA states that one will be selected by the Zurich Chamber of Commerce. The remainder of the arbitration clause sets forth the procedures for designating an arbitrator and defining the issues to be submitted.

### B. The Present Dispute

Although the papers presently before the Court do not reveal the date or exact circumstances, it is apparent that a business dispute arose between the parties sometime during the summer of 1986. In July of 1986 a meeting took place in New York City between Felix Jaecklin and Henry Carlson. During that meeting a handwritten document (the "July Agreement") was executed by Mr. Jaecklin and Mr. Carlson. Although Evergreen characterizes the July Agreement as a "settlement agreement," Geotech contests this characterization and argues that the July Agreement is merely a memorandum of negotiations that is legally binding on neither party.

In September of 1986, apparently of the opinion that the July Agreement did not resolve the parties' disputes, Geotech commenced an arbitration proceeding in Switzerland. The proceeding was commenced pursuant to the procedures set forth in the LMA and was referred to the Zurich Chamber of Commerce in Zurich, Switzerland. In a letter dated October 27, 1986 and addressed to Geotech's Zurich counsel, Evergreen's attorneys set forth Evergreen's position. The letter refers to the arbitration proceeding that Geotech was "purporting to institute in Zurich" and states Evergreen's position with respect to the parties'

dispute. Finally, the letter states Evergreen's intent to seek a stay of arbitration and to institute an action against Evergreen in the Courts of the United States or the State of New York.

### C. Evergreen's State Court Action

Although no stay of arbitration was ever sought in the courts of this or any other country, Evergreen carried out its threat of litigation. An action was commenced in the Supreme Court of the State of New York, County of Suffolk, in February of 1987 (the "State Court Action"). The complaint in the State Court Action sets forth eleven separate causes of action, each of which refers, factually, to the parties' business arrangement described above.

Shortly after they were served, three of the defendants in the State Court Action— Geotech, Felix Jaecklin and Ladina Jaecklin, moved, pursuant to section 3211 of New York's Civil Practice Law and Rules, to dismiss the complaint for lack of subject matter and personal jurisdiction. In a decision dated September 9, 1987, Justice James A. Gowan of the Supreme Court referred to the State Court Action as "retaliation" for Geotech's commencement of the arbitration proceeding. Addressing the personal jurisdiction issue, Justice Gowan held that New York's "Long Arm" statute did not provide a basis for the exercise of personal jurisdiction over the moving defendants. Accordingly, the motion to dismiss was granted. *See Evergreen Systems, Inc. v. Geotech Lizenz AG*, No. 87–13349 (Sup.Ct. Suffolk Cty. Sept. 9, 1987). Judgment was entered upon the dismissal order on November 18, 1987. Although certain defendants remain in the State Court Action they, too, have moved to dismiss. Their motion, however, has not yet been ruled upon.

### D. Goetech's Commencement of The Arbitration

Prior to and during the parties' skirmishes in the State Court Action, Geotech sought, as noted above, to have the parties' dispute resolved through arbitration. To that end, on September 26, 1986, Geotech

served, pursuant to the procedures set forth in the LMA, a "Statement of Claims" upon Evergreen. This document set forth the claims that Geotech wished referred to arbitration and proposed that Dr. Hans Nater, a Zurich attorney, serve as the arbitrator.

On October 27, 1986 Evergreen's counsel corresponded with Geotech's Zurich counsel. That letter, as noted above, characterized the arbitration as "purported" and spoke of Evergreen's intention to seek a stay. Two days later Evergreen's counsel wrote to the Zurich Chamber of Commerce. That letter, dated October 29, 1986, identified the author as Evergreen's attorney, requested a copy of the arbitration rules of the Zurich Chamber of Commerce and advised the arbitrator that Evergreen contested Geotech's rights to commence and engage in the arbitration. On the same day a copy of that letter was sent to Geotech's local counsel in Switzerland.

On November 20, 1986 Geotech's Swiss counsel submitted a petition to the Zurich Chamber of Commerce referring the parties' dispute to arbitration. Evergreen's counsel responded by sending a letter dated November 28, 1986 to the Zurich Chamber of Commerce. That letter requested that the arbitration be dismissed or stayed pending the outcome of Evergreen's anticipated state court action.

Notwithstanding Evergreen's objections, the arbitration process went forward. On December 8, 1986 Dr. Anton Pestalozzi was appointed sole arbitrator by order of the President of the Zurich Chamber of Commerce. In a letter dated December 16, 1986 Evergreen's counsel expressed the company's distress at the appointment of an arbitrator, requested a stay of arbitration and again threatened to seek a stay of the arbitration in the courts of this country.

Evergreen's next correspondence with the arbitrator is dated September 10, 1987. That letter refers to a letter written by the arbitrator to Evergreen on August 14, 1987. In the August 14, 1987 letter the arbitrator gave Evergreen until September 18, 1987 to file its answer to Geotech's request for arbitration. In its letter of September 10, 1987 Evergreen requested an extension of time until September 30, 1987 to answer Geotech's arbitration petition. The arbitrator granted Evergreen until October 8, 1987 to file its answer and on October 7, 1987 Evergreen sent a letter to the arbitrator. Evergreen's October 7, 1987 letter stated Evergreen's intention to pursue an appeal from Justice Gowan's state court ruling. It also stated, unequivocally, that Evergreen would not be submitting any answer to Geotech's arbitration petition.

### E. The Arbitrator's Award

Although Evergreen never appeared or presented witnesses at the arbitration, the arbitrator rendered a decision, dated October 16, 1987, based upon the evidence before him. As a threshold matter, the arbitrator considered whether Evergreen had properly characterized the July Agreement as a "settlement agreement." Finding that this document consisted of nothing more than an "unclear," "rudimentary," and "primitive" "working paper," the arbitrator declined to view the agreement as a settlement agreement that ended the parties' business dispute and superceded the LMA's arbitration mechanism.

The arbitrator then turned to the question of whether Geotech had terminated the LMA in accordance with its terms. Since the arbitrator found that Evergreen had failed to perform various of its obligations under the LMA, the arbitrator held that Geotech had properly exercised its right to terminate the agreement. In accordance with this finding the arbitrator granted Geotech various forms of injunctive relief including the issuance of an order ruling that Evergreen cease using the Evergreen trademark and all technical know-how supplied to Evergreen by Geotech. In an order dated January 25, 1988 the Supreme Court of Zurich issued a certificate making the arbitrator's award enforceable as a court judgment. This proceeding to enforce and recognize the arbitrator's award followed.

## II. The Recognition and Enforcement of Foreign Arbitral Awards

### A. General Principles

This Court's recognition of a foreign arbitral award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") as implemented by 9 U.S.C. §§ 201–08. Each State that is a party to the Convention (referred to as a "contracting state") agrees to recognize another contracting state's arbitral awards and to enforce them in accordance with the rules of procedure of the territory where the award is relied upon. Convention Art. III. Because the public policy favoring international arbitration is strong, it has been held that the terms of the Convention are to be construed broadly. *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983); *see Scherk v. Alberto–Culver, Inc.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974).

Article IV of the Convention sets forth the procedure for obtaining recognition and enforcement of an award. That section requires that a party seeking recognition supply to the Court: (1) the duly authenticated original award or a duly certified copy thereof; (2) the original agreement to arbitrate or a certified copy thereof; and (3) if the award or agreement is in a language different from the official language of the country where the award is to be relied upon, a duly certified translation of the award. *See* Convention Art. IV.

The circumstances warranting a denial of enforcement are narrowly drawn and appear in Article V of the Convention ("Article V"). *See* Convention Article V. The burden of proving that a ground for refusal of enforcement is on the party resisting enforcement. *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RATKA)*, 508 F.2d 969, 973 (2d Cir.1974); *accord Imperial Ethiopian Gov't. v. Baruch–Foster Corp.*, 535 F.2d 334, 336 (5th Cir.1976). Thus, a party resisting enforcement must show that one of the circumstances set forth in Article V of the Convention exists. *Parsons & Whittemore*, 508 F.2d at 973. Specifically, the party resisting confirmation must show:

(1) that the parties to the arbitration agreement were under some "incapacity" or that the agreement to arbitrate is not valid; or

(2) that the party resisting enforcement was not given proper notice of the arbitrator's appointment, the arbitration was otherwise unable to present its case; or

(3) that the arbitral award deals with matters not contemplated by the parties or beyond the scope of the arbitrator's powers; or

(4) that the composition of the arbitral authority or the arbitral procedure was not in accordance of the agreement of the parties; or

(5) that the award has not yet become binding on the parties; or

(6) that the competent authority in the country where recognition is sought finds:

(a) that the subject matter of the parties' dispute is not subject to arbitration under the laws of that country; or

(b) that recognition or enforcement of the award contravenes that country's public policy.

Convention Art. V.

### B. Evergreen's Objections to Recognition and Enforcement of the Award

At the outset the Court notes that since Switzerland is a party to the Convention Evergreen has not questioned this country's willingness to recognize awards made in Switzerland. *See* Convention Article XVI n. 43. Instead, Evergreen's resistance to enforcement of the award is based on grounds allegedly falling within Article V of the Convention.

Initially, Evergreen argues, on information and belief, that Geotech has not submitted the documentation required by Article IV of the Convention. Geotech points out, however, that the appropriate documentation is annexed to the original papers submitted in support of its petition to confirm. Because the Court finds no infirmity in Geotech's moving papers, the Court declines to refuse enforcement based upon a

violation of Article IV of the Convention. *See Bergesen v. Joseph Muller Corp.*, 710 at 934 (copies of award and agreement certified by arbitrator provide sufficient basis upon which to enforce award under the Convention).

▮ Several of the grounds cited in support of Evergreen's argument resisting enforcement relate to the effect of the July Agreement. Basically, Evergreen argues that the July Agreement supercedes the LMA and renders the latter document's arbitration agreement invalid. This characterization of the July Agreement leads Evergreen to argue: (1) that the arbitration agreement is "invalid" so that enforcement would violate section 1(a) of Article V; (2) that the arbitrator decided matters that fell beyond the scope of issues that could have been subject to arbitration so that enforcement would violate section 1(c) of Article V and (3) that the arbitrator decided a matter that is not subject to arbitration under the laws of this country so that enforcement would violate section 2(b) of Article V. Each argument is without merit.

As noted above, the LMA is a formal agreement containing a broad arbitration clause calling for the arbitration of "any dispute arising" under the LMA. *See* LMA ¶ 10. Evergreen's so-called "settlement agreement" is a two-page handwritten document setting forth various terms for the payment of commissions and royalties. The document is devoid of any reference to the termination of the LMA or to its dispute resolution mechanism. Correspondence between the parties' attorneys immediately following execution of the July Agreement is further evidence of the non-binding nature of this document. That correspondence reveals that each side had its own opinion of the meaning of the July Agreement and that there was no meeting of the minds as to its terms. In sum, the July Agreement is no more than evidence of the parties' attempt to settle a business dispute that arose under the LMA. Because the dispute was never settled it became the proper subject of the arbitration mechanism envisioned by the LMA. Thus, it cannot be said that the arbitral award

violates any of the sections referred to above on the ground that the LMA was superceded by a settlement agreement.

Evergreen's next challenge to enforcement of the arbitral award is based on an alleged lack of notice in violation of section 1(b) of Article V. It has been held that this section of the Convention is violated where the arbitral process has failed to comply with this country's standard of fundamental fairness and due process. *See Parsons & Whittemore*, 508 F.2d at 975.

As the discussion above reveals, Evergreen was apprised of every step of the arbitration process. The Company was granted repeated extensions of time and given every opportunity to participate in the arbitration. Correspondence between Evergreen's attorneys and the arbitrator reveal that it was Evergreen's choice to fail to appear at the arbitration and to instead pursue its State Court Action. Under these circumstances the Court has difficulty comprehending the basis for any argument based on an alleged lack of notice. Moreover, the mere fact that participation in a foreign arbitration would be inconvenient for Evergreen does not amount to a denial of Evergreen's due process rights. There is no evidence that the LMA was anything other than a business agreement reached after arms-length negotiations. If Evergreen did not wish to have its business disputes adjudicated in a Swiss arbitration proceeding, it should have negotiated a more favorable term at the outset.

▮ In sum, the Court finds that Evergreen was given ample notice of the arbitration and an adequate opportunity to present its defenses. Evergreen's failure to participate was a decision that was reached only after the Company had full knowledge of the peril at which it acted. Accordingly, the Court holds that recognition and enforcement of the award will not violate the notice provisions of section 1(b) of Article V.

▮ Evergreen's final argument resists enforcement of the award based upon the "public policy" ground stated in section 2(b) of Article V. When construing this section, the Court of Appeals for the Sec-

ond Circuit has noted the "pro-enforcement bias" of the Convention. *See Parsons & Whittemore*, 508 F.2d at 973. Accordingly, that Court has held that the public policy defense to enforcement should be construed narrowly and that "[e]nforcement of foreign arbitral awards may be denied [on the basis of public policy] only where enforcement would violate the forum state's most basic notions of morality and justice." Id. at 974. *See also In re Waterside Ocean Navigation Co., Inc.*, 737 F.2d 150, 152 (2d Cir.1984) (public policy exception to be narrowly construed); *Fotochrome, Inc. v. Copal Co., Ltd.*, 517 F.2d 512, 516 (2d Cir.1975) (same).

Here, Evergreen's public policy argument rehashes the arguments previously summarized and states that enforcement of an award: (1) rendered in the absence of a valid agreement to arbitrate; (2) that deals with matters beyond the scope of the arbitrator's powers and (3) that was rendered without proper notice, violates "this nation's most basic notions of justice."

This Court has held that these specific arguments, when considered separately, do not warrant denial of enforcement. The Court now holds that when considered together these arguments do not amount to a violation of this Country's "most basic notions of morality and justice." *Parsons & Whittemore*, 508 F.2d at 974. Accordingly, the Court declines to hold that enforcement is barred by the narrow public policy exception of section 2(b) of Article V.

### CONCLUSION

Geotech has complied with the technical requirements set forth in Section IV of the Convention. Evergreen has failed to show that any ground stated in Article V of the Convention bars recognition and enforcement of the arbitral award at issue. Accordingly, Geotech's petition is granted.

SO ORDERED.