C. James **PADGETT** and Stuart **Graff**, Petitioners,

v.

Eva **DAPELO**, Respondent.

No. 91 Civ. 7825 (MBM).

United States District Court, S.D. New York.

June 4, 1992.

Friday, and before work and through lunch every day of the week.

Donald T. Trinen, Christa D. Taylor, Hart & Trinen, Denver, Colo., Carl Kuntz,

Pollack & Greene, New York City, for petitioners.

Susan N. Perkins, New York City, for respondent.

## AMENDED OPINION AND ORDER

MUKASEY, District Judge.

As a result of arbitration before the National Association of Securities Dealers ("NASD"), respondent Eva Dapelo secured an award against C. James Padgett and Stuart Graff, petitioners herein, and Stuart–James Company, Inc., Equitable Securities of New York, Inc., and Leonard D. Neuhaus, Jr. (collectively "third parties"). Petitioners move to vacate the award. Respondent cross-moves (i) to join the third parties as third-party respondents, (ii) to confirm the award against petitioners and third-party respondents, and (iii) for sanctions against petitioners' attorneys under Fed.R.Civ.P. 11. For the reasons set forth below, petitioners' motion to vacate the award is denied; respondent's motion to join the third parties is granted; her motion to confirm the arbitral award is granted as against all parties; and her motion for sanctions is denied.

### I.

In May 1988, respondent began trading so-called penny stocks as a client of broker Leonard Neuhaus then associated with First Interregional Equity Corporation. She remained Neuhaus' client and continued to trade in such securities through June 1989. During that time, Neuhaus was associated with several broker-dealers including the Stuart–James Company. Petitioners were directors of Stuart–James at the time of Neuhaus' association with that brokerage.

In March 1990, respondent filed a statement of claim with the NASD against Neuhaus and seven of the broker-dealers with which he was associated, including Stuart–James. Respondent alleged that between May 1988 and June 1989, Neuhaus executed several unauthorized and unsuitable trades and churned her account in violation of § 10(b) of the Securities Exchange Act

of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.-10b–5. Respondent claimed damages in the amount of $124,638. On May 14, 1990, respondent amended her statement of claim to add petitioners Graff and Padgett as parties to the arbitration. Petitioners answered on July 18, 1990.

Hearings were held between July 22 and July 25, 1991 before three arbitrators appointed by the NASD. On October 19, 1991, the arbitrators granted respondent the following relief:

1. First Interregional Equity Corporation and Leonard Dominick Neuhaus, Jr., are jointly and severally liable and shall pay to Claimant, Eva Dapelo, the sum of Four Thousand Three Hundred Dollars and No Cents ($4,300) plus interest at the rate of 9% per annum from the date of closing of the account to the date of payment of this Award;

2. The Stuart–James Company, Inc., Leonard Dominick Neuhaus, Jr., C. James Padgett and Stuart Graff, are jointly and severally liable and shall pay to Claimant, Eva Dapelo, the sum of Seventy Three Thousand Two Hundred Ninety Eight Dollars and No Cents ($73,-298) plus interest at the rate of 9% per annum from 11/1/89 to the date of payment of this Award;

3. Equitable Securities of New York, Inc., and Dominick Neuhaus, Jr., are jointly and severally liable and shall pay to Claimant, Eva Dapelo, the sum of Six Thousand Dollars and No Cents ($6,000) plus interest at the rate of 9% per annum from 11/1/88 to the date of payment of this Award.

Stuart–James also was directed to pay respondent an additional $1,000 to cover forum fees.

## II.

Respondent served the third parties with her Counter–Petition by mail on December 10, 1991. Because the third parties have not responded, they are joined as third-party respondents and the arbitral award is confirmed against them by default.

## III.

■ The United States Arbitration Act, 9 U.S.C. §§ 1–14, establishes a body of federal substantive law governing arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984). When a party moves to vacate an award, "the role of the courts is limited to ascertaining whether there exists one of the specific grounds for vacation of an award provided in § 10 of the Arbitration Act." *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 581 (2d Cir.1967). Petitioners rely on 9 U.S.C. § 10(a)(4) which permits a court to vacate an award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

■ Petitioners claim that "a mutual, final, and definite award … was not made" because they did not receive adequate notice of the matters in dispute and did not voluntarily submit to arbitration. However, respondent's 47–page statement of claim recounts the trades executed by Neuhaus and Neuhaus' association with each of the broker-dealers, including Stuart–James. (*See, e.g.,* Statement of Claim at 10) In addition, respondent's amendments to the statement of claim describes petitioners' connection with Stuart–James and her reasons for seeking to add petitioners as parties to the arbitration. (Letter from Perkins to Masucci of 5/14/90 at 2) Thus, petitioners were notified of the matters in dispute, their connection to those matters and the relief sought. Such notice satisfies due process and the requirements of the Arbitration Act. *See New York Typographical Union No. 6 v. Printers League*, 878 F.2d 56, 61 (2d Cir.1989).

■ Petitioners also were given an adequate opportunity to be heard. Through counsel they answered the statement of claim, presented witnesses and documentary evidence and submitted legal memoranda. Petitioners' argument that their participation in the proceedings was involuntary and hence violated due process because such participation is required by the NASD

is absurd. Petitioners entered the securities business and accepted the burdens of NASD membership voluntarily. If they did not wish to abide by the rules of the NASD, they easily could have avoided such rules by not joining the association. *See Geotech Lizenz AG v. Evergreen Systems, Inc.,* 697 F.Supp. 1248, 1253 (E.D.N.Y. 1988).

■■■■ Petitioners argue also that the arbitrators misapplied the law and ignored relevant evidence. However, errors of law and fact are not grounds for vacating an arbitral award. *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 893 (2d Cir.1985). An arbitral award may be vacated based on the judicially created doctrine of "manifest disregard of the law", *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953), but that doctrine applies only where the "error ... is obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). Moreover, to vacate an award under the manifest disregard standard, the court must find that although the arbitrators were aware of a clearly governing legal principle they consciously decided to ignore it. *Id.; Siegel,* 779 F.2d at 893.

■■■■ Petitioners have presented no evidence that the panel deliberately ignored the governing law. In fact, the evidence presented to the arbitrators suggests that their finding of derivative liability was reasonable. Marc Geman, executive vice-president of Stuart–James testified that the Board of Directors of Stuart–James consisted of himself, Padgett and Graff, and that Padgett, president of Stuart–James, and Graff, chairman of the board, together owned over 94% of the company's stock. According to Geman, petitioners managed the company, set policy and directed the activities of the various brokers. (July 24, 1991 Tr. at 142–43, 181–82; July 25, 1991 Tr. at 27–28, 30, 33, 65–67) As a result, the arbitrators may have found Padgett and Graff liable under § 20(a) of the Securities

Exchange Act, 15 U.S.C. § 78t(a), which states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be jointly and severally liable with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

In *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1299 (2d Cir.1973), the Court established a two-part test for control person liability under § 20(a). First, the court must determine whether the purported control person had the actual authority to direct the activity of the primary wrongdoer. Second, the control person must be a culpable participant in the fraud. *See also Morse v. Weingarten,* 777 F.Supp. 312, 318 (S.D.N.Y. 1991). The arbitrators could have concluded that based on their activities as directors of Stuart–James, Padgett and Graff controlled Neuhaus and managed the corporation in such a manner as to be culpable participants in the fraud perpetrated by Neuhaus. In any event, even assuming that § 20(a) was erroneously applied, based on Geman's testimony and the evidence regarding Neuhaus' activities, such an error was neither "obvious" nor "capable of being readily and instantly perceived." *Merrill Lynch,* 808 F.2d at 933.

Because petitioners have failed to establish a basis for vacating the award, their motion to vacate is denied and respondent's motion to confirm the award against petitioners is granted.

### IV.

■■■■ Respondent has moved for sanctions pursuant to Fed.R.Civ.P. 11. That rule makes the signature of an attorney or party on a submission to the court,

> a certificate by the signer that the signer has read the [submission]; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is

warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The legal standard underlying Rule 11 is an objective one, *Norris v. Grosvenor Marketing, Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986), but "Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well founded." *Business Guides, Inc. v. Chromatic Communications Ent., Inc.*, — U.S. —, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). The Second Circuit has "stressed that [on a Rule 11 motion] 'any and all doubts must be resolved in favor of the signer [of a paper alleged to have been submitted in violation of the Rule].' " *Stern v. Leucadia National Corp.*, 844 F.2d 997, 1005 (2d Cir.1988) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)). By that standard, the award of sanctions in this case would be unwarranted. Petitioners made arguments to distinguish certain existing law and extend other existing law pertaining to enforceability of an arbitral award and derivative liability under the Securities Exchange Act. That such arguments were not successful does not mean that they were objectively frivolous.

\*　　\*　　\*　　\*　　\*　　\*

For the reasons stated above, petitioners' motion to vacate the award is denied; respondent's motion to join the third parties is granted; her motion to confirm the arbitral award against all parties is granted; and her motion for sanctions is denied.

SO ORDERED.