Jordan SHAMAH, Plaintiff,

v.

Anthony W. SCHWEIGER and Katherine Schweiger, Defendants.

No. 97–CV–3936 (JS).

United States District Court,
E.D. New York.

Oct. 16, 1998.

Jordan Shamah, New York City, pro se, former counsel, David Hirschberg, Wexler & Burkhart, Garden City, NY.

John Shin, Silverman, Collura, Chernis & Balzano, P.C., New York City, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Presently pending before the Court is Defendants' motion to modify and confirm an arbitration award rendered April 16, 1997, by an panel of arbitrators in accordance with National Association of Securities Dealers ("NASD") regulations. Plaintiff initially moved in New York State Supreme Court, Nassau County, to vacate the award and Defendants removed the action to this Court. The Court will address Plaintiff's motion to vacate and Defendants' joint motion to modify and to confirm the award.

## BACKGROUND

### 1. THE ACCOUNT, TRANSACTIONS AND COMPLAINT

Defendants Anthony W. Schweiger and Katherine Schweiger (the "Schweigers"), are

a married couple that agreed, after solicitation, to invest in securities with a broker from Stratton Oakmont ("Stratton"), and opened a Stratton customer account in or about 1994. (Schweiger Aff. ¶¶ 1, 7.) Plaintiff Shamah, a vice-president of Stratton, was placed in control of the account. (Schweiger Aff. ¶ 8.)

Defendants' allege that Plaintiff Shamah executed unauthorized transactions in their account resulting in losses in the amount of $113,854.00. Moreover, Shamah purportedly retained proceeds from trades he was instructed to execute.[1] (Schweiger Aff. ¶ 15.) Defendants claim that Plaintiff's conduct constituted a breach of the brokerage agreement, a breach of the fiduciary duty owed to Defendants, misappropriation and conversion of funds as well as misrepresentation of material facts and negligence. (Ex. C.) Plaintiff Shamah denied all allegations claiming that all transactions were authorized and/or ratified and that the losses were caused by Defendants' own negligence. (Ex. C.)

Defendants initiated a claim in accordance with the NASD Code of Arbitration Procedure and as required under the Customer Agreement ("Agreement") executed upon establishing the account. (Schweiger Aff. § 16.) In accordance thereof, a Statement of Claim was filed and duly served upon Plaintiff Shamah, submitting the dispute to arbitration. (Schweiger Aff. ¶¶ 16, 17, 18.) Shamah interposed an answer and filed a Uniform Submission Agreement. (Schweiger Aff. ¶¶ 19, 20; Exs. F & G.)[2] A notice of hearing was sent to the parties, on or about December 20, 1996, and the arbitration hearing was scheduled for March 26 and 27, 1997. (Schweiger Aff. ¶ 25; Ex. J.)

Until January 13, 1997, Plaintiff Shamah was represented by counsel, however, on that date Shamah's attorneys notified the NASD that they were withdrawing as counsel and requested a six month adjournment of the hearing because Shamah was in a distressed financial condition, could not retain new counsel and would not be able to attend the scheduled hearings. (Schweiger Aff. ¶ 26; Ex. K.) The arbitration panel refused the requested adjournment and once again notified the parties of the assigned hearing dates. (Schweiger Aff. ¶ 31.)

Shamah then notified the NASD that he would not be attending the hearing but would make himself available to testify telephonically. (Schweiger Aff. ¶ 32.) This request was opposed by Defendants' counsel, and rejected by the arbitration panel. (Schweiger Aff. ¶¶ 34, 35; Ex. P.)

The hearing was held as scheduled, and although Plaintiff Shamah was not in attendance and was not available by telephone, testimonial and documentary evidence was received into the record. (Schweiger Aff. ¶¶ 36, 38.)

## II. THE HEARING AND AWARD

The hearing was held as scheduled on March 26, 1997, in Philadelphia, Pennsylvania, in front of a panel of three arbitrators and lasted two sessions.[3] (Ex. C.) The panel determined that Shamah received notice of the matter as well as the date and time of the hearing but failed to appear, and is therefore bound by the panel's rulings and determinations. (Ex. C.) The panel also determined that Pennsylvania law applied. (Ex. C.)

Master Glaziers shares resulted in $45,000.00 in proceeds which were never placed in Defendants' account but which allegedly were unlawfully converted for Plaintiff's own use. (Ex. C.)

**2.** Citations to exhibits refer to the exhibits annexed to Defendants' "Notice of Motion to Modify and Confirm Arbitration Award."

**3.** The arbitration panel was comprised of Chairman Steven T. Stern, a Public Arbitrator; Edward M. Miller, a Public Arbitrator; and Michael Quarto, an Industry Arbitrator. (Ex. C.)

---

**1.** The specific transactions complained of include: (1) the purchase on February 16, 1995, without authorization, of 40,000 shares of Aquanatural Co. at $2.50 per share; (2) the purchase on February 16, 1995, without authorization, of 17,000 shares of Care Group at $6.00 per share; and (3) executing an authorized sale of 15,000 shares of Master Glaziers Karate International, Inc., at $3.00 per share, and retaining all proceeds thereto. (Ex. E.) The unauthorized purchases resulted in a total charge to Defendants' account of $202,000.00, exclusive of commissions. The Defendants' allegedly requested that the unauthorized transactions be reversed, but this was never done. The authorized sale of

The arbitration panel unanimously awarded (hereinafter the "Award"), the Schweigers $178,710.75 in compensatory and consequential damages, as well as prejudgment interest calculated at the rate of 6 percent per annum. (Ex. C.) In addition, the panel determined that Shamah was also liable to the Schweigers in the amount of $20,000.00 in punitive damages for his egregious willful and malicious conduct, and Shamah was assessed $1500.00 in fees for the hearing sessions. (Ex. C.)

## III. SHAMAH'S MOTION TO VACATE THE AWARD

Plaintiff Jordan Shamah, through counsel, brought a motion on or about May 5, 1997, in Nassau County Supreme Court, to vacate the arbitration award. The action was removed by Defendants, based on diversity jurisdiction, to the Eastern District of New York, on or about July 7, 1997. Plaintiff's motion alleges the following grounds for vacatur: (1) the panel engaged in misconduct for failing to grant Shamah's requests for adjournment and to attend the hearing telephonically; (2) proper notice of the hearing pursuant to CPLR § 7506 was not provided in that Plaintiff did not receive notice by either personal service, registered mail or certified mail. (Ex. A.) Plaintiff Jordan Shamah decided to represent himself *pro se,* and on May 1, 1998, Shamah and his former counsel, Wexler & Burkhart, executed a Consent To Change Attorneys, which this Court So Ordered on May 15, 1998.

## IV. DEFENDANTS' MOTION TO MODIFY AND CONFIRM THE AWARD

Defendants' move to modify the award because the arbitrators allegedly miscalculated the prejudgment interest by applying Pennsylvania's statutory 6 percent rate instead of New York's statutory 9 percent rate. The Defendants also assert that the award should, in all other respects, be confirmed in its entirety, because there are no valid grounds to vacate the award. Specifically, Defendants' assert that Plaintiff received actual notice of the hearing, and waived his right to object to service thereof by interposing an Answer and a Uniform Submission Agreement without raising objection to service therein. (Exs. F & G.) Additionally, Defendants aver that the arbitration panel's decision not to adjourn the hearing or to allow telephonic testimony did not constitute misconduct, but rather was in accordance with NASD Code of Arbitration Procedure. Finally, Defendants maintain that awarding punitive damages was proper under the teachings of *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), and that Plaintiff was precluded from contesting the punitive portion of the award by the doctrine of collateral estoppel and the doctrine of waiver.

## DISCUSSION

The parties to this case are citizens of different states and have invoked this Court's diversity jurisdiction. As the transactions at issue involve interstate commerce, the provisions of the Federal Arbitration Act ("FAA") are applicable. *Barbier v. Shearson Lehman Hutton., Inc.,* 948 F.2d 117, 120 (2d Cir.1991).

## I. STANDARD OF REVIEW

■ At the outset, it is necessary to recognize the important development of arbitration throughout the legal landscape and the judicial deference accorded arbitration awards. This is most evident by the wide sweep of applications governed by the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.* Arbitration is not limited to contractual claims, rather, statutory claims, including those arising under the Securities Acts, are clearly arbitrable. *See, e.g., Rodriguez de Quijas v. Shearson/American Express,* 490 U.S. 477, 486, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989) (because "resort to the arbitration process does not inherently undermine any of the substantive rights afforded to Petitioners under the Securities Act[s]" of 1933 and 1934, therefore, such claims are arbitrable).

■ The original purpose of the Federal Arbitration Act was to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500

U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (citations omitted); *see also Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995) (FAA was passed to overcome courts' refusals to enforce agreements to arbitrate). Over time, a liberal federal policy has developed favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Once it has been determined that the FAA applies to a particular arbitration agreement, incongruent state statutory schemes are preempted. *See Allied–Bruce,* 513 U.S. at 272–73, 281, 115 S.Ct. at 839, 843.

■ To satisfy arbitration's twin goals of settling disputes efficiently and avoiding long and expensive litigation, arbitration awards are subject to very limited review. *See Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997). Once an award has been entered, Section 9 of the FAA provides that a court, upon timely application by any party, must issue an order confirming the award unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11. The grounds on which an award may be vacated are textually limited and narrowly interpreted. Thus, pursuant to Section 10, a court may vacate the award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

In addition, pursuant to subsection (5): Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

An award may be modified or corrected by the court upon application of any party to the arbitration, pursuant to Section 11:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

Finally, the order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. The foregoing statutory provisions circumscribe a court's review, yet, judicial precedent and legislative intent informs added restraint.

■ There is, however, a doctrine of judicial creation which permits a court to vacate an award if the arbitrators "manifestly disregarded the law" in reaching their decision. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 941, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 935–36 (2d Cir.1986). Because "the reach of the manifest disregard doctrine is severely limited," *Dirussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998), an arbitration award will not be vacated simply because of "error or misunderstanding with respect to the law." *International Telepassport Corp. v. USFI, Inc.,* 89 F.3d 82, 85 (2d Cir.1996). Only where the error is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator … [and] the arbitrator appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it," will manifest disregard exist. *Dirussa,* 121 F.3d at 821. Therefore, in or-

der to modify or vacate an award on the ground of manifest disregard, the Court "must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators ... [was] well defined, explicit, and clearly applicable to the case." *Id.* (internal citations omitted).

■ To facilitate this intended quick, efficient, and informal means of private dispute settlement, it has long been established that arbitrators are not required to disclose the basis or reasoning upon which their awards are made. *See, e.g., Kurt Orban Co. v. Angeles Metal Sys.,* 573 F.2d 739 (2d Cir.1978); *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211 (2d Cir.1972); *Maidman v. O'Brien,* 473 F.Supp. 25 (S.D.N.Y.1979). A court, therefore, need only infer from the facts of the case the grounds for the arbitrator's decision, even where tenuous at best. *See United Paperworkers Int'l Union, AFL—CIO, v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The award may be vacated "only for an overt disregard of the law and not merely for an erroneous interpretation." *Folkways Music Publishers Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993). Thus, the Second Circuit has repeatedly held that an award will not be vacated, "even if the arbitrator's interpretation of the contract is clearly erroneous, so long as such Award is explained in terms that offer even a barely colorable justification for the outcome reached." *Hygrade Operators, Inc. v. Local 333, United Marine Div., ILA, AFL—CIO,* 945 F.2d 18, 22 (2d Cir.1991) (citation omitted). Toward that end, the Supreme Court in *Misco,* albeit in the context of a collective bargaining agreement, proclaimed, "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. The result is really not in issue, as made clear by the Second Circuit in a recent decision upholding the district court's denial of a motion to vacate an arbitration award, in which Judge Walker stated, "in contracting for arbitration of disputes ... the parties bargained for a decision by the arbitrator, not necessarily a good one, and that is what they received." *St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199,* 116 F.3d 41, 45 (2d Cir.1997). Finally, because confirmation of an arbitration award is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court," *Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151, 158 (S.D.N.Y.1990), *aff'd in part, rev'd in part,* 948 F.2d 117 (2d Cir.1991) (internal citations omitted), the party moving to avoid summary confirmation and to vacate or modify an award, must make a highly convincing showing, *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987), and "bears a heavy burden of proof." *Folkways Music Publishers,* 989 F.2d at 111. It is against this backdrop that the Court assesses the instant claims.

## II. APPLYING THE STANDARD TO THE AWARD

As an initial matter, the Court notes that by agreeing to arbitrate, the parties effectively relinquished the right to a court's decision on the merits of the dispute. *See First Options,* 514 U.S. at 941, 115 S.Ct. at 1923. In this posture, it is not the Court's role to decide anew the issues of liability.

### 1. *Plaintiff's Claim of Misconduct for the Denial of Requests for Adjournment and for Participation by Telephone*

■ Plaintiff claims that in light of Shamah's distressed financial condition, resulting from Stratton's liquidation, the arbitrators unreasonably denied Shamah's request to postpone the hearing date. Shamah, purportedly, could not afford to retain counsel or to travel to Philadelphia.

The Court is not persuaded by Plaintiff's claims. Plaintiff failed to provide any evidence in support of his impoverished state, and such a claim is highly suspect in light of the astronomical returns earned while Stratton and its principals were in operation. It appears that Plaintiff, quite familiar with the arbitration proceedings and unable to defend the claims on the merits, made a tactical decision to attempt to elude the binding effect of the arbitration decision. For a com-

plete account of Stratton's litigation history and Shamah's particular involvement therein, see this Court's Memorandum and Order in *Sanders v. Gardner,* 7 F.Supp.2d 151 (E.D.N.Y.1998). In *Sanders,* Shamah unsuccessfully proffered the same excuses for failing to appear at the arbitration and then failed to make himself available via telephone. *Id.* at 168. The Court cannot fathom how a litigant who sincerely wishes to defend a claim, with over three months advance notice, would be unable to arrange to travel from New York to Philadelphia. Moreover, the arbitrators attempted to notify Plaintiff via telephone during the hearing, however, number Shamah listed an inaccurate telephone number with the NASD. This is not an instance in which a last moment emergency or medical condition necessitated the postponement, rather, three months prior to the hearing date Plaintiff requested and was denied an adjournment, leaving him plenty of time to find new counsel, if so desired, and to prepare a defense and appear at the hearing.

"The granting or denying of an adjournment falls within the broad discretion of appointed arbitrators." *Storey v. Searle Blatt, Ltd.,* 685 F.Supp. 80, 82 (S.D.N.Y.1988); *see also Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311, 1318 (S.D.N.Y.1988). Section 10(a)(3) of the Arbitration Act provides that a federal court may vacate an arbitration award if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of the party have been prejudiced." 9 U.S.C. § 10(a)(3). This section has been interpreted to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to review. *See, e.g., Kolacek, III, v. Gemexco Trading, Inc.,* No. 90 Civ. 5760, 1993 WL 258702, at *2 (S.D.N.Y. July 8, 1993) (holding refusal to adjourn hearing dates was within arbitrator's broad discretion); *Agarwal v. Agrawal,* 775 F.Supp. 588, 589–90 (E.D.N.Y.1991) (finding arbitrator's decision to deny postponement was reasonable and not misconduct); *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.,* 774 F.Supp. 146, 149 (S.D.N.Y.1991) (finding refusing to post-

pone the hearing didn't constitute misconduct on the arbitrator's part); *Roche v. Local 32B–32J Service Employees Int'l Union,* 755 F.Supp. 622, 623 (S.D.N.Y.1991) (denial of repeated request for adjournment was not grounds for vacatur); *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.,* 659 F.Supp. 1346, 1354 (S.D.N.Y.1987) ("misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award"). "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Agarwal,* 775 F.Supp. at 590 (citing *Misco,* 484 U.S. at 40, 108 S.Ct. at 372). If it were otherwise, "the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated." *C.A. Tinaway v. Merrill Lynch & Co. Inc.,* 658 F.Supp. 576, 578 (S.D.N.Y.1987) (internal quotations omitted).

The arbitrators evaluated Shamah's request and determined that it did not warrant an adjournment. The arbitrators also made an unsuccessful attempt at telephoning the Plaintiff at the onset of the hearing. Having contractually agreed to arbitrate all claims, Plaintiff cannot be allowed to circumvent arbitration through absentia. Accordingly, in light of the considerable deference accorded arbitrators' decisions and the facts presented herein, Plaintiff Jordan Shamah has failed to show that the arbitrators' denial of his request for an adjournment of the proceedings constituted misconduct within the meaning of 9 U.S.C. § 10(a)(3).

### 2. *Plaintiff's Claim of Improper Notice*

Plaintiff claims that the arbitration award should be vacated because he did not receive proper notice of the hearing, in the form of personal service, registered mail or certified mail. Shamah admits that he received actual notice of the hearing. Specifically, on or about December 20, 1996, the NASD sent the parties notice of the scheduling of the arbitration hearing. (Ex. A ¶ 11.) On or about January 20, 1997, the NASD sent Shamah a hearing advance sheet setting forth the date, time and location of the hearing, with another copy sent via Federal Express on or about March 5, 1997. (Ex. A

¶ 13.) Plaintiff's receipt of notice is further supported by his January 13, 1997 written request for an adjournment, and his February 20, 1997 written affidavit in which he denied the material allegations of the Statement of Claim. (Ex. A ¶¶ 12, 14.) Yet, Plaintiff failed to raise the purported defective notice in either document.

It was specifically noted in the arbitration award that "[t]he Panel, pursuant to Rule 10318 of the Code of Arbitration Procedure, determined that Respondent received notice of the matter as well as the date and time of the hearing but failed to appear. Therefore, Respondent is bound by the rulings and determinations of the panel." (Ex. C.)

The NASD Code of Arbitration Procedure, Section 10318, provides:

If any of the parties, after due notice, fails to appear at a hearing or at any continuation of a hearing session, the arbitrators may, in their discretion, proceed with the arbitration of the controversy. In such cases, all awards shall be rendered as if each party has entered an appearance in the matter submitted.

The provision designating the time and place of the hearing, NASD Code of Arbitration Procedure, Section 10315, provides:

The time and place of the initial hearing shall be determined by the Director of Arbitration and each hearing thereafter by the arbitrators. Notice of the time and place for the initial hearing shall be given at least eight (8) business days prior to the date fixed for the hearing by personal service, registered or certified mail to each of the parties unless the parties shall, by their mutual consent, waive the notice provisions under this Rule. Notice for each hearing thereafter shall be given as the arbitrators may determine. Attendance at a hearing waives notice thereof.

The Court, as described *supra*, must grant an order confirming the arbitration award unless the award is vacated, modified, or corrected pursuant to the specifically enumerated grounds as prescribed in Sections 10 and 11 of the FAA. In light of the compelling policy reasons favoring arbitration and Shamah's affirmative submission of the claim to arbitration and answer thereto, along with

Shamah's actual timely receipt of the notice of hearing, the Court will not overturn the Award based upon a technical procedural irregularity. *See, e.g. Gingiss Int'l, Inc. v. Bormet,* 58 F.3d 328, 332 (7th Cir.1995) ("Inadequate notice is not one of [the statutory] grounds" for vacating an arbitration award); *Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726, 729–30 (5th Cir.1987) (party did not receive the arbitration notice but received constructive notice of hearing, the court affirmed the confirmation of the arbitration award finding "due process is not violated if the hearing proceeds in the absence of one of the parties when that party's absence is the result of his decision not to attend"); *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977) ("no unfairness results from giving effect to the notice they actually received") *Borop v. Toluca Pacific Sec. Corp.,* No. 97–C–4591, 1997 WL 790588, at *2 n. 7 (N.D.Ill.Dec.17, 1997) ("Absent fraudulent or improper conduct, defective notice cannot justify an order vacating an arbitration award under Section 10 of the FAA. 9 U.S.C. § 10. Thus, any defects in notice here do not provide justification for an order vacating the arbitration award."); *Matter of Lauritzen Kosan Tankers (Chemical Trading Inc.),* 903 F.Supp. 635, 637 (S.D.N.Y.1995) (confirming award where party failed to receive proper notice but received actual notice through its attorney); *In re InterCarbon Bermuda, Ltd. v. Caltex Trading and Transp. Corp.,* 146 F.R.D. 64, 68 (S.D.N.Y.1993) ("defects in service of process may nevertheless be excused where considerations of fairness so require, at least in cases that arise pursuant to arbitration proceedings"); *Geotech Lizenz AG v. Evergreen Sys., Inc.,* 697 F.Supp. 1248, 1253 (E.D.N.Y.1988) (enforcing arbitration award where notice was provided but party chose not to attend arbitration because of costs and inconvenience). Shamah received actual notice and was not prejudiced by lack of notice via registered or certified mail. Such defect does not fall within the enumerated grounds for vacating the award.

3. *Plaintiff's Claim of an Improper Award of Punitive Damages*

Shamah argues that the Agreement mandates the application of New York law, a

position with which Defendants agree. Plaintiff contends that New York law forbids the imposition of punitive damages, and therefore, the arbitration panel exceeded their powers, and acted in manifest disregard of the law, mandating vacatur of the award.

The availability of punitive damages in an arbitration award resulting from a customer agreement mandating the application of New York law has been affirmed in numerous courts, including the Supreme Court's bellwether decision in *Mastrobuono*. *Mastrobuono* is directly controlling in the case at bar, notwithstanding Plaintiff's attempt to distinguish the Agreement on what can only be considered semantical grounds. *See Sanders*, 7 F.Supp.2d at 170–79 (analyzing and applying *Mastrobuono* in confirming $10,000,000.00 punitive damages award). *See also Tucker v. Scott*, No. 96–CV–1923, 1997 WL 151509, at *4 (S.D.N.Y. April 1, 1997) (allowing punitive damages claims to go forward); *Prudential Sec. Inc., v. Laurita*, No. 95–CV–7737, 1997 WL 109438, at *5 (S.D.N.Y. March 11, 1997) (denying Prudential's petition for a stay to prevent arbitrator from awarding punitive damages in light of *Mastrobuono*); *Cowen & Co., v. Tecnoconsult Holdings Ltd.*, No. 96–CV–3748, 1996 WL 391884, at *5 (S.D.N.Y. July 11, 1996) (denying petitioners' application to prevent arbitrators from awarding punitive damages in light of *Mastrobuono*); *Kidder, Peabody & Co., Inc., v. Marriner*, 961 F.Supp. 50, 54 (S.D.N.Y.1997) (in denying a stay of arbitration, the Court found *Mastrobuono* does not bar arbitrators from awarding punitive damages); *A.S. Goldmen & Co., Inc., v. Bochner, M.D.*, No. 96–CV–1285, 1996 WL 413676, at *1 (S.D.N.Y. July 24, 1996) (denying petition to stay the arbitration's pending claims for punitive damages, based upon the similarity to *Mastrobuono*); *PaineWebber, Inc., v. Richardson*, No. 94–CV–3104, 1995 WL 236722, at *2, 3 (S.D.N.Y. April 21, 1995) (denying stay of arbitration as it relates to punitive damages which the Court found were allowed in light of *Mastrobuono*); *Sager*, 239 A.D.2d 115, 656 N.Y.S.2d 762 at 764 (reversing stay of arbitration because arbitration clause did not unequivocally exclude punitive damages claim); *Mulder v. Donaldson, Lufkin & Jenrette*, 224 A.D.2d 125, 128, 648 N.Y.S.2d 535, 538 (1st Dep't 1996) (holding "[i]n sum, the decision of the Supreme Court in *Mastrobuono* makes it unmistakably clear that, with respect to arbitration proceeding governed by the FAA which preempts the *Garrity* rule, the arbitration of punitive damage claims is required except where the parties have unequivocally agreed otherwise"); *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Adler*, 234 A.D.2d 139, 140, 651 N.Y.S.2d 38, 39 (1st Dep't 1996) (reversing lower court stay of arbitration of punitive damages because choice-of-law provision was ambiguous, as in *Mastrobuono*, and therefore strong federal policy favoring arbitration included deciding punitive damages award); *Prudential Sec. Inc., v. Pesce*, 642 N.Y.S.2d 466, 468, 168 Misc.2d 699, 703 (Sup.Ct.1996) (leaving punitive damages issue to arbitrators because *Mastrobuono* preempts the *Garrity* rule); *but cf. Eberle v. BMCA Insulation Prods. Inc.*, No 95–CV–10378, 1996 WL 337262, at *3 (S.D.N.Y. June 19, 1996) (denying respondent right to seek punitive damages in arbitration proceeding because choice-of-law clause was not in conflict with customer agreement which provides for application of American Arbitration Association ("AAA") rules, not NASD rules, and AAA rules do not evidence a strong presumption that punitive damages will be available).

Accordingly, the Arbitrators were well within their right to award punitive damages to the Defendants.

### 4. *Defendants' Motion to Modify the Award*

▮ Defendants move to modify the amount of the award to reflect prejudgment interest at the statutory rate of nine percent as provided under New York law, while the arbitrators awarded prejudgment interest at the rate of six percent. Defendants surmise that the arbitrators applied the Pennsylvania statutory rate of six percent.

Pursuant to 9 U.S.C. § 11(a), "the United states court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration— [w]here there was an evident material mis-

calculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." Defendants assert that the application of a six percent interest rate represents a material miscalculation of figures, however, they cite no case in support of this proposition.

■ Arbitrators may provide for preaward interest as part of their award upon which judgment enters, but, " 'if the award is silent on pre-judgment interest, a court is not entitled to award such interest.' " *Moran v. Arcano,* No. 89 Civ. 6717, 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990) (quoting *In re Gruberg,* 143 A.D.2d 39, 531 N.Y.S.2d 557, 558 (1988)); *see also Brandeis Intsel Ltd. v. Calabrian Chems. Corp.,* 656 F.Supp. 160, 170 (S.D.N.Y.1987) (finding pre-award interest, if granted, becomes a part of the arbitration award).

Moreover, Court's have rejected motions to vacate or modify arbitration awards which have failed to provide prejudgment interest. *See Nicoletti v. E.F. Hutton & Co., Inc.,* 761 F.Supp. 312, 315 (S.D.N.Y.1991) (arbitrator's failure to provide prejudgment interest was not grounds for vacatur); *Rosenblum v. Aetna Casualty & Sur. Co.,* 81 A.D.2d 731, 439 N.Y.S.2d 482, 483 (3d Dep't 1981) (refusing to modify arbitrator's award which did not include prejudgment interest).

In the instant action, Defendants presume that the arbitration panel erroneously applied the Pennsylvania statutory rate of 6 percent, yet, it is also possible that the arbitrators used the federal postjudgment rate. "Generally, courts have used the federal postjudgment rate of interest as set out in 28 U.S.C. § 1961 in computing prejudgment interest." *In re Sucre,* 226 B.R. 340, 351, 1998 WL 682189 (S.D.N.Y. Sept.30, 1998) (citing *In re Brantley,* 116 B.R. 443, 448 (Bankr. D.Md.1990) ("Most federal courts which have addressed the issue of the applicable prejudgment interest rate in a case involving federal question have used the applicable federal postjudgment interest rate pursuant to 28 U.S.C. § 1961.")). The specific rate applicable on September 26, 1997, the last Federal T–Bill Auction preceding the date of the Award, was six percent. Thus, while the Second Circuit has not specifically stated which prejudgment interest rate should be applied, it has recognized the district court's discretion to look to the federal rate, rather than the state rate. *See Chandler v. Bombardier Capital, Inc.,* 44 F.3d 80, 84 (2d Cir.1994) (approving district court's use of the federal rate to calculate prejudgment interest where the rate was far lower than the applicable state prejudgment interest rate). Accordingly, the prejudgment interest component of the Award was not miscalculated and the Award will not be modified.

### CONCLUSION

For all the aforementioned reasons, and because neither the Plaintiff nor the Defendants have proved that the arbitrators' Award should be vacated, modified, or corrected as prescribed in Sections 10 and 11 of the Federal Arbitration Act, the Arbitration Award entitled *In the Matter of the Arbitration Between Anthony W. and Katherine Schweiger versus Jordan Shamah,* 96–02652, dated April 16, 1997, is hereby confirmed in its entirety. Plaintiff's motion to vacate the Award is denied in its entirety. Defendants' motion to modify the Award is denied in its entirety. Defendants' motion to confirm the Award is granted. The Clerk of the Court is directed to close the case.

SO ORDERED.